J-S50003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.A.L., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: S.L., MOTHER : | |
| : | No. 1 EDA 2017 |

Appeal from the Decree Entered November 21, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Division, at No. CP-51-AP-0000737-2016

BEFORE: PANELLA, J., MOULTON, J., and RANSOM, J.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 22, 2017**

S.L. ("Mother") appeals the decree of the Court of Common Pleas of Philadelphia County that involuntarily terminated her parental rights to her daughter K.A.L. ("Child") and changed Child's goal to adoption. We affirm.

On March 13, 2013, Philadelphia's Department of Human Services ("DHS") received a general protective services ("GPS") report, alleging Mother had been arrested, on March 12, 2013, for an outstanding bench warrant. The GPS report also alleged that Child and her younger sibling were in the care of their 19-year-old sister who told DHS that she was unable to care for the children. On March 15, 2013, DHS obtained an order of protective custody ("OPC") for Child. The trial court subsequently held a shelter care hearing for Child at which the trial court lifted the OPC and ordered Child temporarily committed to DHS.

Mother was present on May 21, 2013 when DHS held the initial family service plan ("FSP") meeting with a goal of reunification. Mother's goals

were: (1) participate in mental health services; (2) maintain contact with Child through weekly visits; (3) cooperate with DHS and any provider agency; and, (4) complete any individual service plan and FSP objectives.

The trial court adjudicated Child dependent on March 26, 2013 and committed her to DHS. The trial court further ordered Mother referred to the clinical evaluation unit ("CEU") for a drug screen, dual diagnosis and for assessment and monitoring at the Achieving Reunification Center ("ARC"). Mother was present at the hearing. On the same date, Mother again tested positive for benzodiazepines and tetrahydrocannabinol ("THC"). Mother also tested positive for benzodiazepines and THC on April 30, 2013, May 3, 2013, May 22, 2013 and May 29, 2013. Thereafter, Mother was administratively discharged from her drug treatment program because she had not attended any sessions of the program. The CEU recommended that Mother receive inpatient treatment.

At a permanency review hearing on February 17, 2015, the trial court ordered Child to remain committed to DHS and also ordered DHS to conduct a home assessment of Mother's residence and directed that, if appropriate, Child could be reunited with Mother prior to the next court date. At the May 20, 2015, review hearing the trial court learned that Child had been reunited with Mother with DHS supervision. On October 15, 2015, DHS received a GPS report that Mother had relapsed and had tested positive for marijuana and Phencyclidine on October 7, 2015 and October 13, 2015, and that

Mother had missed 21 out of 31 outpatient drug and alcohol treatment sessions.

On October 21, 2015, DHS obtained an OPC for Child and placed Child in foster care. At a shelter care hearing on October 23, 2015, the trial court lifted the OPC, committed Child to DHS, and ordered Mother to the CEU forthwith for a drug screen. At a permanency review hearing on May 2, 2016 the trial court ordered Child to remain committed to DHS and ordered further that Mother be referred to the CEU forthwith for a full drug and alcohol screen, dual diagnosis assessment and monitoring, and three random drug screens prior to the next court date. On May 28, 2016, the Community Umbrella Agency changed its goal from reunification to adoption and referred Mother to ARC for services.

DHS filed its petition terminating Mother's parental rights on August 17, 2016. The trial court entered its decree terminating Mother's parental rights on November 21, 2016. Mother filed her notice of appeal and concise statement of errors complained of on appeal on December 21, 2016.

Mother raises the following questions on appeal:

1. Did the [t]rial [c]ourt err in finding that there was clear and convincing evidence to terminate [Mother's] parental rights under 23 Pa.C.S. Section 2511(a)(1), 2511(a)(2), 2511(a)(5), and 2511(a)(8)?

2. Did the [t]rial [c]ourt err in finding that termination of [M]other's parental rights best served [Child's] developmental, physical and emotional needs under 23 Pa.C.S. Section 2511(b)?

3. Did the Trial Court err in changing [Child's] goal to adoption?

Mother's Brief, at vi.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **See In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id**. (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In her brief, Mother contends the trial court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of his parental rights under § 2511(a)(1),(2),(5) and (8). We need only address subsection (a)(1).

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

With respect to subsection (a)(1), our Supreme Court has held that

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988) (citation omitted).

Further, this Court has stated that

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

DHS presented sufficient evidence to terminate Mother's parental rights pursuant to § 2511(a)(1). Case manager, Charlene Cook, testified that Mother made little effort to improve her ability to parent Child after Child returned to foster care on October 21, 2015, following Mother's relapse. Mother failed to complete drug and alcohol treatment, did not enroll in mental health treatment, and failed to secure housing.

Mother testified she was homeless at the time of the hearing, owed back rent, and believed only financial assistance would enable her to obtain

and maintain housing. She did not think housing counseling from ARC would help her situation. The day before the termination proceeding Mother entered a recovery house for dual diagnosis treatment, explaining, "I had to wait for a bed to open." Mother admitted she did not submit to random drug screens, claiming she was "out of town," "just totally forgot," and "didn't have the carfare." Mother blamed missed visits with Child on SEPTA and her work schedule.

Mother admitted she is not ready to parent. Even counsel for Mother admitted Mother was not ready to parent Child—she asked the court to give Mother "some time to get everything together."

Mother's first attempt at reunification was unsuccessful because she relapsed. Mother presented no evidence to suggest that a second attempt will yield a different result. Mother has not benefited from professional intervention and has failed to engage actively in the treatment services made available to her after Child's return to foster care. The same issues remain outstanding.

The trial court did not abuse its discretion when it found Mother refused or failed to perform parental duties and terminated her parental rights pursuant to § 2511(a)(1).

Mother next argues the trial court erred in finding that termination of her parental rights would best serve Child's developmental, physical and emotional needs under § 2511(b). We disagree.

This Court has stated that the focus in terminating parental rights under § 2511(a) is on the *parent*, but it is on the *child* pursuant to subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*).

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d at 1121 (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008) (citation omitted).

The fact that the child "harbors affection" for a parent and that there is a biological connection is not enough "to establish [that] a *de facto* beneficial bond exists." *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) "The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood." *Id*. (citations omitted).

"[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). "[W]e will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

The termination of Mother's parental rights is in Child's best interests. Between May and September 2016, Mother attended only ten of twenty-nine visits scheduled with Child. Even after receiving notice of the pending termination proceeding, Mother only attended two visits with Child during

September and November 2016. Ms. Cook testified that Mother's conduct had a negative effect on Child.

Child has consented to her adoption by her foster parent. Ms. Cook testified that Child has a bond with her foster mother, calls her "Bonnie Momma," looks to her as her parental figure, and enjoys a stable life in her home.

The evidence presented by DHS establishes Mother lacks the capacity to meet Child's needs. Mother has not met Child's physical and emotional needs to the extent that Child wants her foster mother to adopt her.

We find Mother has waived her final issue—whether the trial court erred or abused its discretion by changing Child's goal to adoption. She failed to raise it as an issue in her concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Yates v. Yates*, 963 A.2d 535, 542 (Pa. Super. 2008).

In any event, even if it had been properly preserved we would have found it lacks merit. The evidence presented and analyzed above makes it clear that a change in Child's permanency goal to adoption is in her best interests. Reunification is no longer a realistic goal. Child's adoption by her foster mother, which Child actively seeks, will protect Child's safety and her "physical, mental, and moral welfare." 42 Pa.C.S.A. § 6351(a). The trial court did not abuse its discretion when it changed Child's goal to adoption.

Accordingly, we affirm the decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and changing Child's goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2017

- 11 -